The opinion of the Court was delivered by
Fenner, J.
The ‘'Acquasco Plantation,” situated in Tensas Parish, from the year 1844 had belonged jointly to Mrs. G-. 0. Covington and her children, the latter, as heirs of their father, Levin Covington, who died in 1844. The mother had, however, always administered and cultivated it.
Iu 1866, Mrs. Covington, being indebted to her factors, R. W. Estlin & Co., executed a mortgage on the plantation in favor of them, or any future holders, to secure the payment of twenty promissory notes, *1173 drawn by lierself, to her own order and by her endorsed, aggregating the sum of $23,299.33.
Five of these notes were paid, and the defendant Bank became, in due course of business, holders of the remaining fifteen, amounting in principal to $18,299.35, with interest at six per cent, from January 1st, 1866.
On the Ilth November, 1869, the plaintiff and her sister, Mrs. Sue Covington Buckner, co-owners, with their mother, of the plantation, addressed a communication to the Bank, in which they referred to the above mortgage as having been consented by their mother without consultation with them, and stated that their mother was only owner of part of the plantation, and that they understood that a large portion of the debt, for which the mortgage was given, had not enured to their benefit; and they then proposed, “ for the sake of a compromise and amicable adjustment of the debt,” to recognize the validity of the mortgage on one-lialf of the plantation. This communication led to negotiations between the parties for a settlement, which resulted finally in a notarial act of compromise, signed by the Bank and other parties interested in the notes, on the one hand, and by Mrs. Covington, by the plaintiff, and by Mrs. Buckner, and by the husbands of the two last named ladies, to authorize them. This act recites the execution of the mortgage by Mrs. Covington alone; states the ownership of the property by her and her children; admits “ that the consideration of the mortgage enured to the benefit of said plantation, * * * and, therefore, is a just debt upon the same, and due by the owners,” and culminates in an agreement to the effect that suit should be brought and judgment rendered in favor of the Bank, for its full claim, and with recognition of the mortgage; that execution should issue histanter, under which the property should be sold for cash, and bought in “by said mortgagor and said co-heirs, or any one they may designate;” and the mortgagees agreed to reduce their claim to the principal alone, abandoning the accrued, interest, and further, to extend the time of payment to one, two and three years from the date of the act, in equal instalments and without interest.
In execution of this settlement, suit was instituted by the Bank against Mrs. Covington, and against the plaintiff and Mrs. Buckner and their husbands to authorize them. In the petition, it was alleged that the mortgage was executed by Mrs. Covington alone; that the other defendants were co-owners of the plantation, but that the debt enured to the benefit of all the parties, and that they all had knowingly approved and ratified the mortgage.
An answer was filed, signed by plaintiff and Mrs. Buckner and their husbands, accepting service of petition, waiving citation, admitting the *1174 truth and justice of the claim, and consenting to the judgment and recognition of the mortgage. In addition thereto, the two married women -were examined by the Judge, apart from their husbands, and their consent was given in ojien court, and entered in the note of evidence in the cause.
All the parties attended in open court, and judgment was rendered, as follows:
“ Considering the law and the evidence, and considering the consent of the several defendants, given in open court, that judgment should be rendered as prayed for j and the court, having examined in chambers said defendants, Mrs. M. C. Thornhill and Mrs. Buckner, separate and apart from their husbands, touching the objects for which the mortgage was contracted, and being satisfied that same was not for said husband’s debts, etc., but did enure to the benefit of the separate property of said defendants, * * * it is ordered, adjudged, etc.,’’proceeding to give personal judgment against Mrs. Covington, and to recognize the mortgage, and order the sale of the property for cash, to pay the debt.
Under writ of ft. fa., the property was sold and was adjudicated to the Bank. Shortly thereafter, the Bank conveyed the property to the plaintiff, Mrs. Thornhill, who had then become a femme sole, the act itself containing clear, internal evidence that the conveyance was made in execution of the compromise, and upon the terms therein agreed upon.
Mrs. Thornhill entered into possession under this title, and so remained for several years, without disputing the rights of the Bank, making one partial payment on the price, and excusing her defaults in payment on grounds of poor crops, losses by overflow, etc.
Finally, in 1875, discovering that the Bank had neglected to record its deed to her in the mortgage office, without notice to the Bank, she sold and delivered the property to one Moreland for $20,000, taking his notes in payment.
On learning this the Bank was driven to a suit to rescind the sale for breach of the resolutory condition of non-payment of the price.
Thereafter, plaintiff instituted the present suit, the object of which is to annul the judgment which was rendered, as we have seen, in execution of the compromise, and under which the property was sold to the-Bank.
The grounds of nullity urged are :
1. That the judgment was rendered against Mrs. G. C. Covington, without citation.
2. That the mortgage enforced by said judgment was null, because it was a mortgage on the property of others than the mortgagor.
3. That, being absolutely null, the mortgage was not susceptible *1175 of implied, ratification, and that sucli ratification, if implied from the compromise and judicial proceedings herein, would have the effect of encumbering paraphernal property, without previous authority of the Judge and compliance with the formalities prescribed by law.
4. That the Bank, having derived the mortgage notes from R. W. Estlin & Co., of W’hich firm Henry Thornhill, the husband of plaintiff, was a member, said firm and said Thornhill, in solido, were liable to the Bank on said notes, and that the proceedings had the effect of mortgaging the paraphernal property for a debt for which he was liable, which could not be legally done.
I.
The first ground has no foundation. The judgment shows upon its face the consent of Mrs. Covington, w given in open court, that judgment should be rendered as prayed for.” Such voluntary appearance cures the want of citation and renders default unnecessary. Marbury vs. Crossley, 29 An. 557.
The consent, being given in open court, was sufficient to sustain the judgment, whether given verbally or in writing ; and when the judgment recites that consent was so given, the fact of the consent and of its sufficiency will be presumed, unless the contrary be made to appear. Woodward vs. Lurty, 11 An. 280.
In absence of proof to contradict the recital of the judgment, it could not be assailed on this ground; but here positive proof is administered that Mrs. Covington did so appear and so consent, which is uncontradicted.
II.
The other grounds may be considered in globo.
They are all concluded, in our judgment, by the compromise and judicial proceedings in execution-tliereof; and by the acts of plaintiff herself, after the death of her husband, when her capacity was unlimited.
At the time when the compromise was entered into, the Bank, and other parties thereto were holders of the mortgage notes, transferred without the endorsement of R. W. Estlin & Co., and on which said firm is not shown to have been, in any'manner, liable to them. This obviates all objections based upon the charge that the debt, settled and secured by the compromise and judicial proceedings, was a debt of plaintiff’s husband.
If the debt evidenced by said notes enured to the benefit of plaintiff and of her separate property, it is clear that she and her separate property were liable therefor. Dickerman vs. Reagan, 2 An. 440; 5 An. 126; 6 An. 121 : 8 An. 512 : 14 An.’194.
*1176 She would have had the right, at that time, with the authorization of her husband, to mortgage her separate property for the security of such a debt. The pretension that prior examination by the Judge, and compliance with other formalities prescribed by the Act of 1850, now Rev. Stat. Secs. 2432, et seq., are essential to the validity of such a mortgage, is groundless. It was long since settled that this legislation did not impair the previous provisions of law in regard to the contracts of married women, but only furnished a mode by which their contracts might be made to furnish full proof against them. Rice vs. Alexander, 15 An. 54.
A married woman may sell her paraphernal property, with the authorization of her husband, and may undoubtedly mortgage it for her separate debt, with like authority, subject only to the condition that the party taking such mortgage incurs the responsibility of establishing that it did enure to her separate benefit.
The authority of a married woman to make a compromise, with tire authority of her husband, has been judicially determined. Barron vs. Sollibellos, 26 An. 289.
The effect of the compromise, and of the judicial proceedings based thereon, was only to effect that which the plaintiff would have had the unquestioned right to do, assuming that the debt was her separate debt, viz: to subject her separate property to the payment thereof.
Can the plaintiff be heard to deny that the debt did enure to her separate benefit 1 We think not. She was a party to the suit in which the judgment assailed was rendered, and she judicially confessed this fact.
The cases suggesting that a married woman is not estopped from attacking her own judicial confession are based entirely upon the supposition that such confession may have been induced by marital influence. But, in the present case, the Judge, before acting on her confession, examined her, separate and apart from her husband, about the nature of the debt, and satisfied himself touching the same and touching the freedom of her action, and her admissions made in open court form part of the evidence. /
Judicial proceedings against married women would be a farce if, under such circumstances, a married woman could go behind her own judicial confessions and admissions. Aubie vs. Gill, 2 An. 343; Dickerman vs. Reagan, 2 An. 440; McComas vs. Green, 6 An. 121.
But the voluntary acts of plaintiff after the death of her husband, in execution of the compromise, are a conclusive ratification thereof, and make it absolutely binding upon her.
Nothing could be clearer, from a mere inspection of the compromise *1177 and the act of sale to plaintiff, than that tlie latter was made in execution of the former.
By accepting title, she voluntarily executed the compromise and forever estopped herself from questioning its validity.
The evidence satisfies us that this ratification was made with full knowledge of every fact essential to an understanding of the entire transaction; and that the present assault was prompted, not by the discovery of any new fact affecting the same, but simply by the discovery that the Bank had neglected to record its deed in the mortgage office, and by tlie opportunity thus afforded, to sell the property, free from the Bank’s mortgage and lien.
Judgment affirmed, at appellant’s cost.